FILED

2017 AUG 31  PM 4:31

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
            DEPUTY

| | | |
|---|---|---|
| JORGE MAGANA,<br>    Plaintiff, | § <br> § <br> § | |
| v. | § <br> § | **EP-16-CV-196-DB** |
| COLEMAN WORLD GROUP, LLC<br>et al.,<br>    Defendants. | § <br> § <br> § <br> § | |

## MEMORANDUM OPINION

On this day, the Court considered Defendants Coleman World Group, LLC,

Coleman American Moving Services, Inc., and Coleman American Companies, Inc.'s

(collectively, "Defendants") "Motion for Summary Judgment" ("Motion"), filed in the

above-captioned case on February 6, 2017.    Therein, Defendants ask the Court to grant

summary judgment in their favor on all of Plaintiff Jorge Magana's ("Mr. Magana") claims.

On February 26, 2017, Plaintiff untimely filed his "Response to Defendants' Motion for

Summary Judgment" ("Response").    On March 6, 2017, Defendants filed their Reply to

Plaintiff's Response.    On March 13, 2017, Plaintiff filed two motions—one asking for leave to

untimely file his Response and another asking for an extension of time to file his

Response—which the Court denied on March 31, 2017.    On April 3, 2017, the Court struck

Plaintiff's Response from the record.    That same day, the Court issued a short order granting

summary judgment in favor of Defendants on all of Mr. Magana's claims.    The Court indicated

that it would later issue a memorandum opinion explaining the ruling's basis.    This is the

corresponding memorandum opinion.

## BACKGROUND

This is an employment discrimination, minimum wage, and retaliation case.    Mr.

Magana is a fifty-nine-year-old Hispanic, Latin-American, and Mexican-American man with

brown skin. Pl.'s Second Am. Compl. ¶ 8. He claims that while he worked for Defendants, they discriminated against him based on his age (in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 ("ADEA")) and national origin and skin color (in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII") and the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.051 ("TCHRA")) by paying him less than younger white men and promoting them without advertising the positions. Pl.'s Second Am. Compl. ¶¶ 47–48, 51. He also claims that Defendants did not pay him the minimum wage required by the Fair Labor Standards Act, 29 U.S.C. § 215 ("FLSA"). Pl.'s Second Am. Compl. ¶ 52. When he complained about his pay and discrimination, he claims that Defendants retaliated against him in violation of Title VII, the TCHRA, and the FLSA. Id. ¶¶ 49–50, 53.

Mr. Magana worked—through a staffing agency—as a temporary worker for Defendants beginning in April 2014. Id. ¶ 14; Defs.' Mot. Summ. J. 4. Defendants are a group of companies, collectively referred to as "Coleman," which provide moving and storage services. Defs.' Mot. Summ. J. 2. Employees at Coleman serve in a variety of capacities including in administrative, driving, and warehouse roles. Id. at 2–3. Of these, warehouse associates, helpers, and packers assume similar tasks that are assigned interchangeably. Id. at 2.

At some point while Mr. Magana was a temporary worker, Defendants hired a white man named James Silva ("Mr. Silva"). Id. at 4; Pl.'s Second Am. Compl. ¶ 17. Mr. Magana testified in a deposition that Defendants asked him to train Mr. Silva and that Mr. Silva told him that he earned $10 per hour. Defs.' Mot. Summ. J., Ex. C at 36. However, Defendants' business records reflect that they paid Mr. Silva $9 per hour. Id., Ex. A-2. Mr. Magana complained to his supervisor that "the good ole' boy system was alive and well at Coleman." Pl.'s Second Am. Compl. ¶ 22.

On August 14, 2014, Defendants hired Mr. Magana as a full-time employee. Defendants agreed to pay Mr. Magana $9 per hour for warehouse work; this would be his regular wage. Defs.' Mot. Summ J., Ex. A at ¶ 7, Ex. A-1, Ex. A-6. Four other employees in Mr. Magana's position were paid more than $9 per hour and all of them were Hispanic and over forty years old. *Id.*, Ex. A at ¶ 7, Ex. A-2. For work outside the warehouse, Defendants paid all employees, including Mr. Magana, according to the "hundredweight system." *Id.*, Ex. A at ¶¶ 9–13, Ex. A-1, Ex. A-6. The hundredweight system determined an aggregate pay for all the workers in a shift based on the weight of the items in a shipment and then distributed that aggregate amount in proportion to each worker's regular wage. *Id.*, Ex. A at ¶¶ 9–11. Under this system, for example, a worker whose regular wage was $20 per hour would make twice the amount of the worker whose regular wage was $10 per hour. *Id.*, Ex. A at ¶ 11.

When Mr. Magana worked shifts under the hundredweight system, he could make more or less than $9 per hour depending on how much work he and his team collectively completed. For some weeks in which Mr. Magana worked non-warehouse shifts, the hundredweight system resulted in a rate less than $7.25 per hour for those shifts. *See id.*, Ex. A-6 (documenting payments on October 6, 2014, December 8, 22, and 29, 2014, and January 20, 2015, that compensated Mr. Magana less than $7.25 per hour under the hundredweight system). However, Mr. Magana's pay records reflect additional shifts at the $9-per-hour rate during each of those weeks. *Id.* As a result, the rate for all the shifts in each week exceeded $7.25 per hour.

Defendants' pay records for Mr. Magana show that during his tenure at Coleman his pay fluctuated, both in terms of his gross weekly pay and his wage calculated on a weekly basis. For example, his gross weekly pay averaged $450.94 per week in September, $311.07 per week in October, $237.14 per week in November, $432.06 per week in December, and

$256.91 per week in January. *Id.*, Ex. A-6. At the same time, his three lowest-wage weekly paychecks occurred on October 6, 2014 ($7.65/hour), December 29, 2014 ($7.25/hour), and January 20, 2015 ($7.25/hour). His three highest-wage weekly paychecks occurred on October 27, 2014 ($12.83/hour), November 24, 2014 ($15.01/hour), and January 12, 2015 ($12.06/hour). *Id.* Despite the frequent fluctuation, his average weekly wage was higher in September through November than it was in December or January. *See id.* (averaging $9.80/hour in September, $10.29/hour in October, $11.43/hour in November, $8.91/hour in December, and $9.26/hour in January).

Mr. Magana lived about twenty-five miles from the Coleman worksites. *Id.*, Ex. C at 31. Defendants did not pay Mr. Magana for his travel between his home and his work. *Id.* Sometimes Mr. Magana drove to work and did not receive a work assignment. *Id.* On a few occasions, Mr. Magana spent five to ten minutes waiting to see if an assignment was available or more time waiting for someone to drive him home after finding out that there was no assignment. *Id.*, Ex. C at 33–34. Defendants did not pay Mr. Magana for this wait time. *Id.*

From August 2014 to January 2015, there were no advertised promotions at the company. *Id.*, Ex. A at ¶ 14; Pl.'s Second Am. Compl. ¶ 16. Mr. Magana claims that Defendants promoted his white coworkers through an informal word-of-mouth system. Pl.'s Second Am. Compl. ¶ 16. In a deposition, Mr. Magana stated that he assumed a younger white man named Matthew Bowland ("Mr. Bowland") had been promoted because he had started telling the other employees what to do. Defs.' Mot. Summ J., Ex. C at 42. Defendants' business records reflect that Mr. Bowland held the same position as Mr. Magana and was not promoted. *Id.*, Ex. A-2. Mr. Magana also claimed in his deposition that although management never advertised a promotion, he thought that management was going to put a younger white man named Kyle

Musser ("Mr. Musser") "in charge." *Id.*, Ex. C at 44. Defendants' business records reflect that Mr. Musser held the same position as Mr. Magana. *Id.*, Ex. A-2.

Mr. Magana claims that in November 2014 he complained that the company was not paying him for all of his work. Pl.'s Second Am. Compl. ¶¶ 31–32. He claims that he complained again in November or December 2014, when he walked in on his coworkers complaining to his supervisor about pay discrepancies and racial discrimination and joined the conversation. *Id.* at ¶¶ 30(A)–30(B). Finally, he claims that on or about January 21, 2015, he complained to his superior, Chris Regan ("Mr. Regan"), about discrimination and retaliation and told Mr. Regan that he was filing a complaint with the Equal Employment Opportunity Commission and the Texas Workforce Commission. Pl.'s Second Am. Compl. ¶ 38; Defs.' Mot. Summ. J., Ex. C at 51. That same day, Mr. Magana resigned from his job. Pl.'s Second Am. Compl. ¶ 40.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1). "[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th

Cir. 2012) (citing *Celotex*, 477 U.S. at 323). Where, as here, the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the moving party "must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

A fact is "material" only if it would permit "a reasonable jury . . . [to] return a verdict for the nonmoving party" and "might affect the outcome of the suit." *Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 458–59 (5th Cir. 1995), *aff'd en banc*, 79 F.3d 1415 (5th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986)). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Duffie*, 600 F.3d at 371 (internal quotation marks omitted).

"When the moving party has met its Rule 56[] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Id.* The nonmovant "must identify specific evidence in the record and articulate [how] that evidence supports that party's claim." *Id.* "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a "scintilla" of evidence.'" *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). "In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party." *Id.* (citing *Liberty Lobby*, 477 U.S. at 255).

## ANALYSIS

### 1. Mr. Magana's Discrimination Claims

Defendants argue that the Court should grant summary judgment in their favor on all of Mr. Magana's discrimination claims. Defs.' Mot. Summ. J. 5. Mr. Magana claims that Defendants discriminated against him based on his national origin and skin color when they allegedly compensated him less than a white employee and based on his national origin and skin color and his age when they failed to promote him.[1] Pl.'s Second Am. Compl. ¶¶ 47–48, 51. Defendants argue that Mr. Magana cannot make a prima facie case of discrimination because he cannot identify specific instances in which someone outside his class was paid more or promoted. Defs.' Mot. Summ. J. 7–9.

When a plaintiff brings a Title VII or ADEA discrimination claim without direct evidence of discrimination, a court must apply the "*McDonnell Douglas* burden-shifting framework." *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 267 (5th Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973)); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999) ("The same evidentiary procedure for allocating burdens of production and proof applies to discrimination claims under both [Title VII and the ADEA]"). Under that framework, a plaintiff:

> must first demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate [or take some other adverse employment action against] the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext, or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic.

---

[1] Plaintiff's Complaint includes three separate causes of action alleging discrimination, one for discrimination in compensation and two for failure to promote. It does not include causes of action for constructive discharge or disparate treatment. Therefore, the Court will not address any arguments related to those unasserted claims.

*Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411–12 (5th Cir. 2007).

To establish a prima facie case of discrimination under Title VII, a plaintiff must show that she (1) belongs to a protected group; (2) was qualified for the position; (3) suffered an adverse employment decision; and (4) was replaced by, or treated less favorably than, someone outside the protected group. *Jenkins*, 784 F.3d at 268. Substantially the same elements constitute a prima facie case for age discrimination under the ADEA and national origin discrimination under the TCHRA. *See Leal v. McHugh*, 731 F.3d 405, 410–11 (5th Cir. 2013) (requiring under the fourth element that the plaintiff show that she was treated differently than a substantially younger person rather than a person outside the protected class); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) ("Because one of the purposes of the TCHRA is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964, we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA." (internal quotation marks omitted)). Adverse employment action means an ultimate employment decision such as "hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).

### a. Discriminatory Compensation Claim

Defendants argue that Mr. Magana cannot make a prima facie case of compensation discrimination because he was not paid less than a white employee in the same position. Defendants argue that Mr. Magana made a typical wage for employees hired in his position. Defs.' Mot. Summ. J. 3. They provide evidence that Mr. Magana's regular wage was $9 per hour. *Id.*, Ex. A at ¶ 7, Ex. A-1. They provide further evidence that only four other employees in his position were paid more than $9 per hour and that all of them were Hispanic and

over forty years old.  *Id.*, Ex. A at ¶ 7, Ex. A-2.  In addition, they provide evidence that Defendants paid Mr. Silva, a white employee, $9 per hour.  *Id.*, Ex. A-2.

The only evidence before the Court that Defendants paid Mr. Magana less than a white employee in the same position is a hearsay statement from Mr. Magana's deposition when he described circumstances that prompted his complaint to management:

> They had put a new member on the team, a white guy.  His name is James Silva. They made me train him, and they were paying him more.  Because [sic] I did talk to James.  I said, 'How much are they paying you?'  He told me that he was making ten bucks an hour.

Defs.' Mot. Summ. J., Ex. C at 36.  Aside from Mr. Magana's statement that Mr. Silva told him that he was making $10 per hour, there is no evidence that Mr. Magana was paid less than a white employee in the same position.  Mr. Magana's hearsay statement is no more than an unsubstantiated assertion that is insufficient to create a genuine issue of material fact that he was paid less than a white employee.  *See Duffie*, 600 F.3d at 371 ("This [Rule 56] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a "scintilla" of evidence.'" (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))).  Therefore, the Court finds that Mr. Magana cannot make a prima facie of compensation discrimination.  Thus, the Court grants Defendants' Motion on Mr. Magana's claim that they discriminated against him in his compensation.

### b.  Discriminatory Failure-to-Promote Claims

Defendants argue that Mr. Magana cannot make a prima facie case of discriminatory failure to promote because there were no promotions available at the time Mr. Magana worked there, Mr. Magana did not apply for any promotions, and no one else was promoted during that time.  Defs.' Mot. Summ. J. 8.

There is no dispute that Mr. Magana belongs to classes protected by Title VII, the TCHRA, and the ADEA: he is a Mexican-American man with brown skin who is over forty years old. However, Mr. Magana cannot make a prima facie case because the only evidence before the Court does not show that he applied for and was qualified for a promotion, that he was rejected, or that someone outside of the class or someone significantly younger received the promotion. *See Burrell*, 482 F.3d at 412 (stating that to make a prima facie case on a failure to promote a plaintiff must show that: (1) she belongs to a protected class; (2) she applied for and was qualified for a position for which applicants were being sought; (3) she was rejected; and (4) a person outside of her protected class was hired for the position).

Mr. Magana does not claim that he applied for any promotions. On the contrary, he claims that Defendants did not advertise whatever promotions were available. Pl.'s Second Am. Compl. ¶ 16. In some circumstances, an employee may not need to show that that she actually applied for a promotion. *See e.g. Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384, 387 (2d Cir. 2000) (stating that the plaintiff did not need to show that he applied for a position when he had expressed interest in being promoted to a class of positions, and the employer did not post those positions when they became available); *Colbert v. Infinity Broad. Corp.*, 423 F. Supp. 2d 575, 582–83 (N.D. Tex. 2005) (suggesting that the plaintiff would not need to show that he formally applied for a promotion if he showed that the employer used an informal "word-of-mouth" application system). Nevertheless, even where an employee alleges that her employer used an informal word-of-mouth promotion system, courts have required the plaintiff to identify a specific promotion and show that someone outside of her class received it. *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 711 (2d Cir. 1998) (stating that the plaintiff's claim that the defendant's discriminatory practices caused her to stop applying for promotions was not sufficient

where she did not identify any specific promotions to which she would have applied); *Siddiqui v. AutoZone W., Inc.*, 731 F. Supp. 2d 639, 657 (N.D. Tex. 2010) (granting summary judgment where the plaintiff claimed generally that he was denied promotions over a period of time because it was "unclear from the record what particular promotion or promotions would be tried to the jury.").

In his deposition, Mr. Magana claimed that Defendants promoted Mr. Bowland, a younger white man. Defs.' Mot. Summ J., Ex. C at 40. However, when questioned further about the promotion, Mr. Magana stated that he assumed Mr. Bowland had been promoted because he had started telling the other employees what to do. *Id.*, Ex. C at 41–42. He had no further evidence that Mr. Bowland was in fact promoted. *Id.*, Ex. C at 42. Defendants, however, have provided documentation showing that Mr. Bowland held the same position as Mr. Magana and was not promoted. *Id.*, Ex. A-2. Mr. Magana's unsubstantiated assertions do not create a genuine issue of material fact that Mr. Bowland was promoted.

In his deposition, Mr. Magana described another time in which he claims a younger white man received a position that may have been higher than his. Mr. Magana stated that Mr. Musser was hired for a position, but that management "never put any kind of notice up" that a promotion was available. *Id.*, Ex. C at 44. Mr. Magana stated that "they were going to put [Mr. Musser] in charge," but there is no evidence before the Court to support this assertion. *Id.* On the contrary, the only evidence before the Court shows that Mr. Musser held the same position as Mr. Magana. *Id.*, Ex. A-2. Once again, Mr. Magana's unsubstantiated assertion does not create a genuine issue of material fact that someone outside of his protected class received the promotion.

Defendants have provided evidence that no promotions took place during the time Mr. Magana worked at Coleman. *Id.*, Ex. A at ¶ 14. Mr. Magana's unsubstantiated assertions that he thought other employees were promoted do not raise a question of fact. Therefore, the

Court finds that Mr. Magana cannot make a prima facie of discriminatory failure to promote. Thus, the Court grants Defendants' Motion on Mr. Magana's claim that they discriminated against him in failing to promote him.

## 2. FLSA Pay Violations Claim

Defendants argue that the Court should grant summary judgment in their favor on Mr. Magana's FLSA pay violations claim. Mr. Magana claims that Defendants violated the FLSA by "not paying [him] for the work he performed, by not paying him at least a minimum wage, and by not paying him for reporting to work when the company required him to report to work but did not give him any work assignment." Pl.'s Second Am. Compl. ¶ 52.

The FLSA requires an employer to pay its employees a minimum wage of $7.25 per hour of compensable work. 29 U.S.C. § 206. Compensable work under the FLSA is work that is integral and indispensable to the principal activities that an employee is employed to perform. *Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 519 (2014). In other words, to be compensable, the work must be "an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.* Time spent traveling from home to work is not integral to the job and is therefore not compensable unless the employer and employees have a contract or custom of compensating for that travel. *Vega v. Gasper*, 36 F.3d 417, 424 (5th Cir. 1994; *Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 410 (5th Cir. 2011). Further, "[t]he standard . . . for 'wait time' is the same as for 'travel time.' Wait time is compensable when it is part of a principal activity of the employee, but not if it is a preliminary or postliminary activity." *Vega*, 36 F.3d at 425.

Here, Mr. Magana claims that Defendants did not pay him the minimum wage and did not pay him for all of the time that he actually worked. Defendants have provided evidence

that they paid Mr. Magana $9 per hour for warehouse work and according to the hundredweight system for work outside the warehouse. Defs.' Mot. Summ J., Ex. A at ¶¶ 9–13, Ex. A-1, Ex. A-6. Defendants' evidence further shows that they paid Mr. Magana at least the minimum wage for the total number of hours worked each week. *Id.*, Ex. A at ¶¶ 12–13, Ex. A-6. For some weeks in which Mr. Magana worked non-warehouse shifts, the hundredweight system resulted in a rate less than $7.25 per hour for those shifts. *See id.*, Ex. A-6 (documenting payments on October 6, 2014, December 8, 22, and 29, 2014, and January 20, 2015, that compensated Mr. Magana less than minimum wage under the hundredweight system). However, Mr. Magana's pay records reflect additional shifts at the $9-per-hour rate during each of those weeks. *Id.* As a result, the rate for all the shifts in each week exceeded the minimum wage. In other words, although Mr. Magana earned less than minimum wage for some individual shifts, he received more than the minimum wage on a weekly basis.

The Fifth Circuit has not directly considered whether courts should evaluate the FLSA's minimum wage provision using a weekly wage standard (determining the rate by dividing the week's pay by the total hours worked that week) or an hourly wage standard (requiring an employer to pay an employee at least $7.25 for each individual hour of work).[2] However, five other circuits have adopted the weekly wage standard. *E.g. U.S. Dept. of Labor v. Cole Enters., Inc.*, 62 F.3d 775 (6th Cir. 1995); *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986); *Dove v. Coupe*, 759 F.2d 167, 172 (D.C. Cir. 1985); *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969); *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490–91 (2d Cir. 1960). District courts in the Fifth Circuit that have considered the issue have also adopted the weekly wage standard. *E.g. Carman v. Meritage*

---

[2] In *Albanil v. Coast 2 Coast, Inc.*, the Fifth Circuit followed the weekly average standard used by the district court because the plaintiffs did not object to it. 444 F. App'x 788, 805 n.16 (5th Cir. 2011).

*Homes Corp.*, 37 F. Supp. 3d 860, 867 (S.D. Tex. 2014); *Sandoz v. Cingular Wireless, LLC*, No. CIV. A. 07-1308, 2013 WL 1290204, at *4–5 (W.D. La. Mar. 27, 2013); *Johnson v. RGIS Inventory Specialists*, 554 F. Supp. 2d 693, 710 (E.D. Tex. 2007). Only a handful of district courts in other circuits have followed the hourly wage standard. *E.g. Douglas v. Xerox Bus. Servs., LLC*, No. C12-1798-JCC, 2015 WL 10791972, at *7 (W.D. Wash. Dec. 1, 2015) (rejecting the weekly wage standard in *Klinghoffer*, 285 F.2d at 490–91, because it was a criminal case and did not properly consider the remedial nature of the FLSA) *motion to certify appeal granted*, No. C12-1798-JCC, 2016 WL 4017407 (W.D. Wash. Feb. 29, 2016); *Norceide v. Cambridge Health All.*, 814 F. Supp. 2d 17 (D. Mass. 2011) (finding a minimum wage violation where an employer paid hospital workers $0 per hour for some hours but their average weekly pay was more than minimum wage); *Schmitt v. Kansas*, 844 F. Supp. 1449, 1457 (D. Kan. 1994) (acknowledging that the weekly wage standard was the general rule but holding that it was not binding precedent in the Tenth Circuit).

The Court will follow the weekly wage standard used within the Fifth Circuit and by the majority of other courts: an employer does not violate the FLSA's minimum wage provision if the employee's weekly wage divided by the number of hours worked exceeds $7.25. All the evidence before the Court shows that Mr. Magana was paid on a weekly basis at least minimum wage for the hours that he worked. Therefore, there is no genuine issue of material fact that Mr. Magana was paid less than minimum wage for the time he worked.

Relatedly, there is no dispute that Defendants did not pay Mr. Magana for his travel time to work. However, Mr. Magana is not entitled to travel time because, as a matter of law, home to work travel is not integral and indispensable to the principal activities of Mr. Magana's position. *See Vega*, 36 F.3d at 424 (explaining that normal travel between home and work is not

compensable).   Mr. Magana stated in his deposition that on a few occasions he also was not paid for time—five to ten minutes—he spent waiting to see if an assignment was available or additional time he spent waiting for someone to drive him home after finding out that there was no assignment.   Defs.' Mot. Summ J., Ex. C at 33–34.   Mr. Magana's complaint does not mention wait time.   Nevertheless, the time Mr. Magana describes is not compensable because it is both de minimis and not integral and indispensable to the principal activities of Mr. Magana's position. *See Vega*, 36 F.3d at 425 (applying the same standard for wait time and travel time); *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1414 (5th Cir. 1990) ("The de minimis rule provides that an employer, in recording working time, may disregard 'insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes.'" (quoting 29 C.F.R. § 785.47)).

There is no genuine issue of material fact that Defendants paid Mr. Magana less than minimum wage or did not pay him for the hours that he worked.   The only evidence before the Court shows that Mr. Magana was paid at least minimum wage for all compensable time that he worked.   As a matter of law, Mr. Magana's travel time and wait time are not compensable. Therefore, the Court grants summary judgment in Defendants' favor on Mr. Magana's FLSA pay violation claim.

### 3. Retaliation Claims

Defendants argue that the Court should grant summary judgment in their favor on Mr. Magana's retaliation claims.   Defs.' Mot. Summ. J. 14.   First, Mr. Magana claims that after he spoke out about national origin and skin color discrimination, Defendants retaliated against him in violation of Title VII and the TCHRA when they underpaid him, reduced his hours, assigned him to lower-paying tasks, and failed to promote him.   Pl.'s Second Am. Compl. ¶ 49.   Second,

he claims that Defendants "retaliated and discriminated against [him] for opposing discrimination against other Hispanic, Latin-American, or Mexican-American employees when [Defendants] did not promote them," in violation of Title VII and the TCHRA. *Id.* at ¶ 50. It is unclear whether this second claim alleges that failing to promote the other employees was the act of retaliation (in which case Mr. Magana would not be the proper plaintiff) or it was the discriminatory act that he opposed (in which case it is not clear what act he claims was retaliatory). Third, Mr. Magana claims that Defendants violated the retaliation provision in the FLSA by "not paying him for all the work he performed, by paying him less than what he was supposed to be paid, by slotting him to work lower paying assignments to reduce his bi-weekly pay, by reducing the number of his work assignments to reduce his biweekly pay, by not promoting him, by not paying him after he reported to work and was given a work assignment, and by constructively discharging him." *Id.* at ¶ 53.

When a plaintiff brings a Title VII, TCHRA, or FLSA retaliation claim without direct evidence, a court must, as with discrimination claims, apply the *McDonnell Douglas* burden-shifting framework. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001) (applying the framework to a Title VII retaliation claim); *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004) (applying the framework to a TCHRA retaliation claim); *Starnes v. Wallace*, 849 F.3d 627, 631 (5th Cir. 2017) (applying the framework to a FLSA retaliation claim). Under that framework as applied to retaliation claims:

> (1) [F]irst, the employee must demonstrate a prima facie case of retaliation; (2) the burden then shifts to the employer, who must state a legitimate non-retaliatory reason for the employment action; and (3) if that burden is satisfied, the burden then ultimately falls to the employee to establish that the employer's stated reason is actually a pretext for unlawful retaliation.

*Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). To establish a prima facie case of retaliation under Title VII, the TCHRA, or the FLSA a plaintiff must show "'(1) that the plaintiff engaged in activity protected by [the statute] (2) that an adverse

employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action.'" *See Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (discussing Title VII retaliation claims) (quoting *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002)); *Pineda*, 360 F.3d at 487 (describing the same elements for TCHRA retaliation claims); *Starnes*, 849 F.3d at 631 (describing the same elements for FLSA retaliation claims).

Protected activity occurs when an employee complains to management about an unlawful employment practice or warns management that she will file a complaint if such a practice does not stop. *See Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (concluding that the plaintiff did not engage in protected activity because she did neither of these things). An informal, internal complaint may constitute protected activity. *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 626 (5th Cir. 2008); *Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914 (5th Cir. 2008) (citing *Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir. 1980)). However, "not all abstract grumblings or vague expressions of discontent are actionable as complaints." *Hagan*, 529 F.3d at 626.

Mr. Magana claims that while he was a temporary employee, he complained to his supervisor that "the good ole' boy system was alive and well at Coleman." Pl.'s Second Am. Compl. ¶ 22; Defs.' Mot. Summ. J., Ex. C at 37. Mr. Magana further claims that in November 2014, he complained that the company was not paying him for all of his work and that in November or December 2014, he walked in on his coworkers complaining to his supervisor about pay discrepancies and racial discrimination and joined the conversation. Pl.'s Second Am. Compl. ¶¶ 30–32. Finally, he claims that on or about January 21, 2015, he complained to his superior, Mr. Regan, about discrimination and retaliation and told Mr. Regan that he was filing a

complaint with the Equal Employment Opportunity Commission and the Texas Workforce Commission. Pl.'s Second Am. Compl. ¶ 38; Defs.' Mot. Summ. J., Ex. C at 51.

Defendants have not adequately addressed whether Mr. Magana's informal complaints about his wages and about discrimination against himself and coworkers constitute protected activity. Rather, Defendants "assum[e] without conceding that Magana's complaints were protected activity," and argue that his claims fail on other grounds. Defs.' Mot. Summ. J. 18. The Court, like Defendants, will assume that Mr. Magana has met this element.

Defendants argue that Mr. Magana cannot make a prima facie case of retaliation because none of the acts he complains of amount to adverse employment actions. On the contrary, Mr. Magana claims that Defendants underpaid him, reduced his hours, assigned him to lower-paying tasks, and failed to promote him. Pl.'s Second Am. Compl. ¶¶ 49–50. He describes the same purported adverse actions for his FLSA retaliation claim and adds that Defendants did not pay him for his home-to-work travel and constructively discharged him. Pl.'s Second Am. Compl. ¶ 53.

Several of the items that Mr. Magana claims are adverse employment actions fail from the start. For the reasons explained above, there is no evidence before the Court that Defendants failed to promote Mr. Magana. Likewise, there is no evidence that Defendants reduced Mr. Magana's pay rate—he was consistently paid $9 per hour for warehouse work or on the hundredweight system for work outside the warehouse. Defendants never had any obligation to pay Mr. Magana for home-to-work travel. Moreover, Mr. Magana's claims clearly do not amount to constructive discharge. *See Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 440 (5th Cir. 2005) (stating that the standard for a plaintiff to prove constructive discharge is higher than that of hostile work environment).

However, changes in Mr. Magana's assignments could be an adverse employment action if they amount to a demotion. Although a purely lateral transfer is not an adverse employment action, a transfer that is the equivalent of a demotion is one. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007). Mr. Magana claims that after he complained of discrimination and FLSA violations Defendants reduced his hours and assigned him to lower paying tasks. Pl.'s Second Am. Compl. ¶¶ 34, 53. The evidence before the court raises a fact question about whether Mr. Magana's pay decreased after he engaged in protected activity. Defendants hired Mr. Magana as a full-time employee on August 14, 2014. His pay records show that his gross weekly pay fluctuated throughout his tenure at the company. *See* Defs.' Mot. Summ. J., Ex. A-6 (averaging $450.94/week in September, $311.07/week in October, $237.14/week in November, $432.06/week in December, and $256.91/week in January). His pay records also show that his wage, calculated on a weekly basis, fluctuated throughout his tenure. For example, his three lowest-wage weekly paychecks occurred on October 6, 2014 ($7.65/hour), December 29, 2014 ($7.25/hour), and January 20, 2015 ($7.25/hour). His three highest-wage weekly paychecks occurred on October 27, 2014 ($12.83/hour), November 24, 2014 ($15.01/hour), and January 12, 2015 ($12.06/hour). Yet, his average weekly wage was higher in September through November than it was in December or January. *See* Defs.' Mot. Summ. J., Ex. A-6 (averaging $9.80/hour in September, $10.29/hour in October, $11.43/hour in November, $8.91/hour in December, and $9.26/hour in January). The Court finds that there is sufficient evidence to raise a genuine issue of material fact that Mr. Magana was assigned to lower paying assignments after he engaged in protected activity.

Nevertheless, to make a prima facie case, Mr. Magana must show a causal link between the reduction in pay and work assignments and his protected activity. "[T]emporal

proximity between the protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015). To establish causation by timing alone, "the protected act and the adverse employment action [must be] 'very close' in time." *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). Gaps as large as four months have sufficed. *Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001); *see also Porter*, 810 F.3d at 948–49 (holding that "the six-and-a-half-week timeline between [the plaintiff's] testimony and the denial of her rescission is sufficient to satisfy the prima facie case of causation" and collecting cases).

Here, the only evidence of any causal link pertains to the timing of the complaints and the adverse action. No other evidence has been presented to the Court. As explained above, Mr. Magana made his informal complaints before August 14, 2014, in November 2014, in November or December 2014, and on January 21, 2015. He was hired as a full-time employee after he complained about "the good ole' boy system" in the company. Pl.'s Second Am. Compl. ¶¶ 22 –24. Therefore, there is no evidence to show a causal nexus between Mr. Magana's complaint about "the good ole' boy system" and his reduced assignments. On the other hand, the temporal proximity between Mr. Magana's other informal complaints, as described above, and his reduced weekly wages in December and January could establish a causal nexus. The only evidence of a possible reduction in wages occurred in December and January. *See* Defs.' Mot. Summ. J., Ex. A-6 (showing reduced weekly wage averages in December and January). This timing is very close to when Mr. Magana complained of discrimination and pay violations.

Assuming that Mr. Magana has made a prima facie case, the burden shifts to Defendants to offer a legitimate non-retaliatory reason for the reduction in pay and work assignments. *See Royal*, 736 F.3d at 400 ("[If] the employee . . . demonstrate[s] a prima facie case of retaliation . . . the burden then shifts to the employer, who must state a legitimate non-retaliatory reason for the employment action."). Defendants argue that their business is seasonal, with the "busy season occurring throughout the summer and business steadily decreasing throughout the fall and winter." Defs.' Mot. Summ. J. 11. Therefore, they claim, Mr. Magana's pay fluctuated and the reduced business in the winter created a reduction in work assignments throughout the facility. *Id.* This explanation suffices as a legitimate non-retaliatory reason for Mr. Magana's overall reduction in pay and work assignments.

Because Defendants have met their burden of production, the burden shifts back to Mr. Magana to show enough evidence to create a genuine issue of material fact that Defendants' reason is a pretext for retaliation. *See Royal*, 736 F.3d at 400 ("[I]f [the defendant's] burden [of production] is satisfied, the burden then ultimately falls to the employee to establish that the employer's stated reason is actually a pretext for unlawful retaliation."). To satisfy the burden of proof at the pretext stage, a plaintiff must prove that retaliation was a but-for cause of the employment decision. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).[3] In other words, a plaintiff claiming retaliation must prove that the adverse employment decision "would not have occurred 'but for' her protected conduct." *Septimus v. Univ. of Hous.*, 399 F.3d 601, 608 (5th Cir. 2005). "The pretext inquiry focuses on the authenticity of the employer's proffered reason." *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 594 (5th Cir. 2007). "A court may infer pretext where a defendant has provided inconsistent or

---

[3] While a plaintiff may prove a discrimination claim by showing that discrimination was only a motivating factor for the decision, the Supreme Court has rejected that standard for retaliation claims. *Nassar*, 133 S. Ct. at 2533–34.

conflicting explanations for its conduct." *Id.* "[I]t is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (italics omitted). In *Reeves*, the Supreme Court explained:

> In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt."

*Id.* (quoting *Wright v. West*, 505 U.S. 277, 296 (1992)); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").

Here, Mr. Magana offers no evidence that the Defendants' reason is a pretext for retaliation. Likewise, there is no inconsistency in Defendants' reason from which a trier of fact could infer that it is false. Mr. Magana has not met his burden of showing that Defendants' legitimate non-retaliatory reason for his reduction in pay is pretext. Therefore, the Court grants Defendants' Motion on Mr. Magana's retaliation claims.

## CONCLUSION

Mr. Magana cannot make a prima facie case of Title VII and TCHRA discrimination based on age, national origin, and skin color because Mr. Magana cannot show that he was paid less than someone outside his protected class or that someone outside of the class or significantly younger than him received a promotion. Likewise, Mr. Magana's FLSA pay violations claim fails because there is no genuine issue of material fact that Defendants paid Mr. Magana less than $7.25 per hour, when calculated on a weekly basis. Further, time that Mr.

Magana spent traveling from home to work and waiting for assignments is not compensable under the FLSA.

The Court applied the *McDonnell Douglas* burden-shifting framework in evaluating Mr. Magana's claims that Defendants retaliated against him in violation of Title VII, the TCHRA, and the FLSA. Each portion of Mr. Magana's prima facie case is tenuous at best: his informal complaints may not amount to protected activity, but Defendants assume that they do; there is some evidence that Mr. Magana's work assignments resulted in reduced weekly wages and the timing of those reductions closely coincided with Mr. Magana's complaints. It is unclear whether this evidence is sufficient to raise a genuine issue of material fact that Mr. Magana suffered an adverse employment action and that a causal connection exists between the action and Mr. Magana's protected activity. Nevertheless, Defendants offered a legitimate non-retaliatory reason for the reduction in pay and work assignments. Mr. Magana failed to rebut that reason and show that retaliation was a but-for cause of his reduced work assignments. Accordingly, the Court grants summary judgment in Defendants' favor on all of Mr. Magana's claims.

**SIGNED** this **31st** day of **August 2017**.

_____
**DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**